Mr. Holm on this appeal. He was represented by a separate counsel at the trial court level previously and I was asked to take this case on appeal and appointed to represent it. This case concerns a sentencing issue relating to an enhancement on the federal sentencing guidelines. The enhancement is a four-level enhancement applied to Mr. Holm by the trial court for possession of the firearm in connection with another felony offense. And as the brief that we wrote indicates and explains to you all, the trial court in this instance relied on two different theories to explain why the trial court believed that four-level enhancement applied. Does the record show whether the trial court had had experience with Mr. Holm before in her prior work? Well, there's an affidavit that Mr. Holm submitted that would suggest that. And that was submitted as part of a request to supplement the record when it was brought to his attention that he could do so. Unfortunately, the trial court, even though that's on file and in the record and we refer to it, the trial court said that she wasn't going to allow that to be submitted as part of the supplemental record under Rule 10. But there's an indication that she may have had prior contact with him when he was previously prosecuted in the Northern District of Iowa based on the comments that he recalls her saying to him prior to his guilty plea. But that issue is not really actually directly raised. It may impact what this court chooses to do should it remand the case for resentencing because we believe the case probably best should be remanded for resentencing before a different judge in light of some of the things that have come to light. But in any event, the trial court relied on two theories. The first theory was that the firearm that was found on Mr. Holm's person during a vehicle stop had been used in connection with an aggravated misdemeanor, which is defined as a felony under the guidelines because it's punishable by more than a year. And that was that he had recklessly discharged the firearm a day or so before he was found in possession of it. The government agrees that that theory of the trial court was not supported by anything in the record and that the only evidence in the record is that the firearm was accidentally discharged in connection with some type of an altercation that Mr. Holm had with another individual. So unless there's a question about that theory, I don't want to really spend time addressing it. The second theory that the trial court relied on was that the firearm was possessed in connection with another felony, the other felony being possession of roughly a half a gram of methamphetamine found at the time of his arrest when he was also in possession of the firearm. And the trial court theorized that that prior possession, number one, that he knowingly possessed that small amount of methamphetamine, even though the report really doesn't provide us any real information about the circumstances of it in terms of its possession or its being found at the time of his arrest. It merely says it was found on that occasion, and he was in a vehicle at that time. And there's no indication as to whose vehicle it was or where precisely it was found. But she theorized that that was a prior possession offense or a possession offense that was being committed at the time, and that further, that prior possession, because he had a firearm at the same time, notwithstanding the factual stipulation of the parties, that there was no connection between his firearm possession and any other offense, that, therefore, it was possessed in connection with a felony possession. And she found that it was a felony possession by taking into account certain of Mr. Holmes' prior criminal history, including two convictions that even the government agrees definitely don't count to enhance his misdemeanor possession to a qualifying aggravated misdemeanor or felony. And those were the one from, I believe, California, and the prior one, I believe, out of the Northern District of Iowa that the judge seemed to have some familiarity with based on her prior employment in that district and the fact that it was in the report. But she also relied on two others that were in the pre-sentence report. There were Iowa State convictions for possession. Those were certainly closer, but in our view, they also didn't qualify. And the reason they didn't qualify is the enhancement under the possession statute in Iowa, which we cite to in our brief and the government refers to it as well, requires that the convictions be sustained by the defendant under particular statutory numbered provisions. And the pre-sentence report refers to these old convictions from the mid-'90s, but it does not indicate what statutory sections those convictions were attained under. And there are several different provisions under Iowa law where a person could be convicted of possession, some of which we cite to in our reply brief. And so there's no record as to the particular code provisions under which those priors were sustained by Mr. Holm. Well, you cite Chapter 126, which is the Drug, Device, and Cosmetic Act, and the 155A on pharmacy. Correct. Is that right? Yes. And you think those prohibit and make a crime the possession of the drugs that are listed in that cocaine and methamphetamine? Controlled substances, certain controlled substances. But simple possession is a prohibited act? It is under certain circumstances under those code chapters, and it was in the mid-'90s as well. The point is that there is no way to tell, and the trial court actually didn't make any findings. She didn't take judicial notice of any such thing. Well, I'm just trying to make sure those are possible bases for the conviction. I thought the pharmacy might have been limited to prescription drugs. Well, I think there are certain types of controlled substances that cross over on the schedules of controlled substances between the prescription-type controlled substances and controlled substances that could never be obtained even under a prescription. And there have been occasions when methamphetamine has been, in certain forms, a prescription-type substance, or substances containing it have been. The point is that there's no record in this case as to where those convictions were attained, under what circumstances or what statutory provisions. And that's part of the burden of proof before somebody could say that that element was established to enhance any alleged possession on the occasion in question to a potential felon. Does the court take judicial notice if the only basis in the Iowa Code for a conviction of possession of methamphetamine is 120, or what is it, what's the, is the one that she's using? I think, in theory, the court could have, but the court did not do that. The court merely said these are prior possessions, and therefore, that's it. There was no statement that these are prior possessions or finding that these are prior possessions under these particular provisions of the Code. Now, as I understand, judicial notice is, the court is taking judicial notice of a fact, and then once the court takes judicial notice of that fact, it's a fact in the record. Well, it's really more a question of law, I guess, now that I think about it, right? Well, it might be. A question of law, is there any basis in the Iowa Code for a conviction of possession of methamphetamine, other than the code section that triggers the enhancement? Well, I think. If the answer to that is no, then why doesn't it follow that this qualifies? I think you could look at it that way. The way I read the one case that we cite to from the circuit, this circuit, on whether or not a prior is an enhanceable or not enhanceable prior or the nature of it, seems to say that that's a fact issue in this kind of an instance, and therefore it has to be established somehow in the record through some method or methodology. And that was the theft situation as to whether or not this prior was a certain level of theft. But in any event, I see my time's up, and I'd like to reserve. I'd like to ask a question, too. Yes. Is some of this, would we have plain error standard review for some of this? I mean, how much did you object to at the time? Well, I believe that the objection by the former counsel was that it's a very odd record because what happened to start with is the court ruled. And then the attorney stood up and said, well, I still would like to be heard. And so then he stood up and made a statement about some of these issues. But the questions, I think, have all been adequately preserved because he did object that the prior, or that even if it was a possession of methamphetamine that was being committed on the occasion when he had the firearm that he was being sentenced for, he said, but it's not a felony. There's no showing it's a felony within the meaning of the guideline. And I think that's sufficient to raise that issue. And he also objected to the circumstances of whether or not the firearm was possessed in connection with a possession. That's clearly objected to. And, of course, the government had stipulated that it wasn't. And we think the stipulation is not only just some type of an agreement that the trial court could disregard or fail to give some weight to, it's a factual matter that has to be taken into account in an analysis of whether or not the evidence supports it. And we cite to the Kang case, K-H-A-N-G, that the circuit decided many years ago, wherein there was a similar situation. Two to one overruled on the merits issue it decided. Well, it's actually overruled on the issue you're citing it for. Right, right. Plus overruled by Pertusaski. Well, it's overruled on the question of whether or not the government has to prove a connection versus whether or not. It's a clearly improbable issue. Yeah, or whether or not they have to prove that it's clearly improbable. And that issue was resolved in Pertusaski to the contrary. They said the government doesn't have to prove a connection. But as to the connection question, that's the same standard that applies under the provision of the guidelines that I'm talking about. So I think it's still at least persuasive authority on that question. But I'd like to reserve my two and a half minutes if I could, unless you had other questions right now. Thank you. May it please the court. Mr. Stowers, my name is Andrew Call. I'm an assistant U.S. attorney in the Southern District of Iowa. This case presents in the context of a negotiated plea agreement where the government had agreed that the four-level enhancement did not apply. Most of the focus in the court below had to do with this incident at an apartment in Boone, Iowa, on May 20th when a firearm was discharged. As we've indicated and conceded in our brief, the officer who responded about 24 hours later simply was not in a position to give any testimony about the circumstances of that discharge to establish that the discharge had been intentional or reckless. There were three juveniles, I believe, present, as well as a woman named Jennifer Nye. Officer Rose, who was the Boone police officer, mentioned that he had not interviewed the juveniles that Sergeant Weibold had interviewed, at least one of them. Sergeant Weibold was available at the hearing, but the district court did not call him as a witness. So while the record showed that that officer had interviewed the people who were there at the time of the discharge? Yes. Where in the record will I get that? In Officer Rose's testimony, which is only probably about four or five pages, the district court judge asked Officer Rose, did you interview the juveniles? Officer Rose says, no, I did not. Sergeant Weibold conducted that interview. And he was the other one who was there? He was the other one who was there, and the district judge actually stated on the record that she did not need to call him as a witness. So while the government certainly appreciates the district court's instinct that the discharge of a firearm under any circumstances in a multi-person dwelling causes great risk to life and safety, the government's position is that the violation of that Iowa statute simply was not established. What was the basis for the stipulation that the four-level adjustment doesn't apply based on the possession and the prior possessions under Iowa law together with the possession of the firearm at the time he was arrested? Well, sort of a two-fold answer. Frankly, I think the discussions and concerns were focusing more on this incident on May 20th in Boone and our assessment of what witnesses would be available, were they available, had they made inconsistent statements, ought we? No, I'm talking about the alternative basis for the stipulation. Did the government just overlook that? Is that your position, or did you have a position on the merits as to why it wasn't warranted? Well, I think, you know, on the merits, I don't want to mislead the court and think that that issue was something that was a matter of considerable deliberation when we entered into the stipulation. As I say, the focus of the discussions, I think, were on the other incident. Regarding the possession of the firearm in the vehicle with the priors, you know, that is, frankly, an enhancement that our office often would not seek. It's a little bit arbitrary in that having a misdemeanor conviction under Iowa law is enough to trigger that to become the simple possession to become felony possession, whereas, say, the felony conviction out of the Northern District of Iowa is not sufficient. So when you say the office typically wouldn't seek it, you mean because it's arbitrary, you mean the government, your office basically disagrees with the guideline and, therefore, doesn't seek to apply it? We would typically not seek that guide to apply that enhancement. I think we would also look at these things in a practical sense in that even if we had prevailed on that and contested that to the nth degree, depending upon how the factual record developed and how the district judge felt about the particular case, it may well have been discounted to some degree through a downward variance. Again, when you're negotiating ---- That's a different point. You could say, yes, this guideline applies as a matter of law and the facts, but we think the resulting range overstates the proper sentence, and we recommend a variance. But that's not what your office did here. Your office just said we think the guideline is ---- we disagree with the guideline, and so we're not going to seek it. Well, I think to some degree that's 20-20 hindsight because, again, I don't want ---- So you're saying you didn't necessarily focus on it. Exactly. But I thought you also said we typically don't, quote, seek this adjustment. Exactly. So looking back at it, we still would have probably entered into that stipulation or a similar sort of recommendation because of the concerns about that particular case. Well, why do you do it by ignoring the guideline rather than through the mechanism you described, which is to apply the guideline as it's written and then recommend a variance? Well, in this case, I think there's at least a little bit of question about the facts in that the facts are not developed regarding where the personal use of methamphetamine ---- Now, wait, that's hindsight. And really ---- There's this question about which of the Iowa codes it was. That's hindsight. This record suggests you didn't even evaluate that. Or are you saying you did evaluate it and decided not to? Since the guideline is arbitrary, you wouldn't ---- you'd stipulate away the enhancement. I think, you know, to the extent it was thought through at the time we entered into the stipulation, it was more or less what you've articulated. But, you know, again ---- What, you did or you didn't do the evaluation? If you did the evaluation, why didn't the court get the benefit? That is, of which Iowa possession section was the underlying basis for the convictions we're talking about this morning. If you did that evaluation prior to the stipulation, why didn't the district court get the benefit of that? Well, and frankly, I don't think ---- I mean, certainly there's nothing in the record that would indicate that there was a close evaluation of that issue. I know there isn't, but you're suggesting ---- I don't understand what you're saying here. You either evaluated it. You've told us the guideline is arbitrary, but you didn't really focus on that. I mean, this is going all over the map. Based on my understanding and knowledge of how the plea discussion was handled, I really don't think that particular issue was looked at. All right, but you seem to be saying the U.S. attorney for the district going forward would do the same thing again on the view that the guideline is arbitrary and the office doesn't want it to apply. Is that your representation? As a matter of policy, that would be the way the United States attorney would intend to approach this sort of situation in the future. Well, does the U.S. attorney, as a matter of policy, have the option whether the guidelines should apply? We certainly have the option, I believe, to determine our litigating position and determine what we wish to seek under the guidelines. The district court, of course, is not bound by that. That's made clear in this plea agreement. It's certainly not a C plea agreement, I think, in candor and looking at the record. And then deprive the district court, if interested, of the fact-gathering abilities of the U.S. attorney's office, including an evaluation of the underlying Iowa state convictions. The government created the bad record because the government, we learned, doesn't agree with the things the guideline is arbitrary. I think regarding the record, there are two pieces to it. One is the finding of the methamphetamine either on Holmes' person or in his vehicle or at least at the time that he was found in possession of a weapon. And frankly, I see this court's cases as probably establishing a bright line for situations where the firearm and the personal use quantity where it's felony possession are in public, like in a car. There's an argument, I suppose, that could be made on this record that because it's not clear precisely where the methamphetamine was located, that might or might not have been the same. Well, the only reason it's unclear is because you didn't choose to put the evidence into the record. I am not entirely clear that that evidence would have ever been available in that plea agreement. Yeah, we don't know. All we know is that you declined to your office, declined to build a record on the question. Well, although the pre-sentence report essentially perished the discovery material that the probation officer who wrote the pre-sentence report had regarding that issue. And I don't know, particularly with two years gone by, whether the officer who made the stop would have any independent recollection now as to where that methamphetamine was found. I do think on a plain error that regarding which chapter of the Iowa Code we're talking about, that ought to be a plain error review because that argument was not made. As I understand, Chapters 126 and 155A, those have to do with prescription medications. The definition includes of drugs for that. Those sections include drugs and items intended for use in the diagnosis, cure, mitigation, treatment, or possession of disease. There's a little additional language as well, but certainly based on my experience in the Southern District of Iowa and looking at Iowa convictions, possession offenses would be most typically under Chapter 124. And on a plain error standard, I think the district judge would have been entitled to draw that conclusion. To answer Judge Murphy's earlier question, there is nothing in the record to indicate that the district court judge had any experience with this particular defendant during her tenure either as a U.S. attorney or previously as an assistant United States attorney in the Northern District of Iowa. I believe the pre-sentence report from the earlier Northern Iowa case is in the record as Sentencing Exhibit 1. It was a 1998 case, which means it would have come into that office prior to Judge Rose's appointment as United States attorney. It was a case prosecuted out of that district's Sioux City division. It's my understanding that Judge Rose was in the Cedar Rapids office throughout her entire career, but there's at least nothing in the record to suggest that the district court judge had ever had any contact with Mr. Holm prior to her initial judicial contact with him at the plea hearing. The affidavit that Mr. Holm now wants to put in the record is, I think, beyond anything this court ought to consider. It's a self-serving affidavit, not subject to any sort of cross-examination. And had that encounter occurred, certainly trial counsel would have had the opportunity or should have put that into the record at the time and not now many, many months later. What is your position if we felt because of some sentencing problem, for example, that we had to send the case back? Would it have to go back to a different judge or the same judge? What's your thought? My thought is, firstly, that that's a matter within this court's discretion, that typically this court will not do that as a matter of routine unless it's a situation where the government has breached the plea agreement and put something in front of the record that the first sentencing judge shouldn't have seen. I think in the first instance on a question of recusal or disqualification, that's something that typically is looked at first by the district court judge in question. And so I would think that if that were an issue, that ought to be an issue that would be taken up by a district court judge. And again, to the extent that these recusal kinds of issues are being raised, they're really being raised after the fact. It's a plain error. Well, they were raised insofar as they've been raised, which is a little bit unclear in the brief. Weren't they raised when the information came to light? You say after the fact. Are you referring to the affidavit about the alleged encounter in the courtroom? Well, I'm referring to perhaps three things. I'm referring to the district judge's prior employment as a United States attorney in the Northern District of Iowa. I'm referring to that encounter that supposedly occurred. I suppose I'm also referring to the e-mail discussions that came into the record at sentencing, and to the extent that Mr. Holman is raising questions about this employment-related litigation and the fact that the United States Department of Justice through another office was handling that, that if any of those things formed the basis for recusal, which seems to be suggested in the briefs, those facts were all known prior to the sentencing. Those facts were available, and as I think the court indicated in the Robashkin case, this court has never found a failure to self-recuse on a plain error standard. These other ---- Well, there was one post-sentencing e-mail that came into the record. Correct. Although that is not in the record. It's not in the record. The district court denied the motion to supplement the record. The motions panel of this court denied the motion to supplement the record to the extent it's considered in the record. It's a ---- it happened after the sentencing, so I'm not sure how that could have infected or affected the sentencing decision. I have exhausted my time, so unless the court has further questions, I would ask, well, I guess as indicated in our brief, the government is taking no position because of the stipulation regarding the four-level enhancement, but would ask that in other respects the decision below be affirmed. Thank you. Mr. Bowers has about two and a half minutes. Two twenty-eight, according to the big clock. Well, I think just to sort of cover a little bit of the basis here, number one, I think what the reasoning was of the U.S. Attorney's Office, et cetera, that's been described here in arguments, I don't think that that's really got much to do with what we're here to decide. There's no record of what their reasoning was. There's a stipulation in the plea agreement. And frankly, I'm not in a position to talk about it because I wasn't involved in the negotiation of the plea agreement because I didn't represent Mr. Holm at that time. So I think that's a little bit problematical. Secondly, I think that it's not correct to say that anytime a person is found in possession of a controlled substance, knowingly, which is an issue in this case, and also contemporaneously in possession of a firearm and is convicted of felon in possession of a firearm as the offense, that this enhancement that we're talking about, this four-level increase for possession of the firearm in connection with a felony, assuming that the possession is enhanced to a felony, always applies because in the Smith case that this court has, as this court said in a different context, I'll admit that, because the drugs in that case and I believe the gun were found in the house, but they said a de minimis amount of drugs and firearms alone. We reject the district court's conclusion that the mere presence of drug residue, i.e. a de minimis amount of drugs and firearms alone, is sufficient to prove the in connection with requirement. That's what the court said as the legal holding in the Smith case. Subsequently, other factual scenarios have been looked at where the gun and the drugs are outside the house, on the person's person, et cetera. But there's at least a significant fact question about whether or not, in this case where we're talking about apparently a half gram of methamphetamine, found either in a vehicle or on Mr. Holm's person, where there's no evidence that he actually knew that that methamphetamine was there, such that he could exercise dominion and control over it within the Iowa legal standard for that, which is very narrow, particularly in the vehicle context. And whether or not that would constitute, I see my time's up, whether or not that would constitute possession. But the bottom line here is I think this case falls down to burden of proof, and the burden of proof for this enhancement is on the party, the government in this case, because it's an enhancement. And if the record fails to establish those things, it fails in that regard. To the extent the trial court may have felt deprived of facts, I think reality is that there was another witness that the trial court chose not to call who could have testified about the circumstances of this vehicle stop and other things, and the court chose not to call that. I can't remember the name, but there was two witnesses brought forth who could testify to the paragraphs in the report that were in play. I think they were paragraphs 12 to 15. And the name of that witness was identified for the court. It was stated that they were available. And then after calling the first witness on the apartment situation with the bullet hole in the wall, the court said, We won't need the other witness. They can be excused. And the first witness the court had called, questioned, et cetera, and then the second witness was available as requested by the court or the government, and the court chose not to present that. I think there's a failure of proof, and I think that's why the defendant should win and the case should be remanded. Thank you. Thank you, Counsel. The case has been well briefed and argued. Mr. Stowers, we appreciate your service in the Criminal Justice Act. It was not an easy case to step into, and you did a good job. Thank you.